IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>LUIS DANIEL ORTIZ-MARRERO [3]<br><br>**Defendant** | **CRIM NO. 18-496-3** (RAM) |

**OPINION AND ORDER**

RAUL M. ARIAS-MARXUACH, United States District Judge

This matter comes before the Court on Defendant Luis Daniel Ortiz-Marrero's ("Defendant" or "Mr. Ortiz-Marrero") "*Motion Requesting the Mental Examination Of Defendant*" (the "*Motion*") for a competency determination. (Docket No. 158). Having heard the testimony of the parties' proffered experts, considered the documentary evidence, and observed Defendant at the competency hearing, the Court finds Ortiz-Marrero competent to stand trial. He **is not** presently suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly with his defense.

**I.   BACKGROUND**

Defendant was indicted and charged with drug trafficking offenses on August 24, 2018. (Docket No. 20). He was found

competent to understand the proceedings at his bail hearing on March 20, 2019. (Docket No. 60). On March 4, 2020, Defendant moved for a competency evaluation, which the Court ordered. (Dockets Nos. 158 and 162). Shortly thereafter, the COVID-19 pandemic and lockdowns ensued, which delayed his transfer outside Puerto Rico for a competency evaluation for about a year.

As a result, on March 29, 2021, Mr. Ortiz-Marrero filed an emergency motion seeking to vacate both the order for a competency evaluation and his imminent transfer outside Puerto Rico for the evaluation. (Docket No. 232). In this motion, Ortiz-Marrero's counsel stated that the competency evaluation was no longer necessary, as Defendant was competent and can participate and make decisions during the plea negotiations process and assist counsel at trial if necessary.

The Government opposed the motion and pressed for Defendant to be evaluated to avoid any future claims of ineffective assistance of counsel or a motion to vacate or set aside Defendant's sentence. (Docket No. 235). At a status conference on April 19, 2021, the Court ordered Mr. Ortiz-Marrero be evaluated by a local expert selected by his counsel. (Docket No. 236). The Government then requested its own expert evaluation, which the Court also ordered. (Dockets Nos. 250 and 270).

The Court held a competency hearing on April 20, 26 and 27, 2022. (Docket Nos. 326-328). Defendant presented the testimony of

Dr. Ana Rosa Díaz-Miranda ("Dr. Díaz-Miranda"), and the Government presented the testimony of Dr. Carmen J. Rodríguez ("Dr. Rodríguez"), the Federal Bureau of Prisons' ("BOP") psychologist who evaluated Defendant at FDC Miami. (Docket Nos. 326-327; 327-328).

## II. FINDINGS OF FACT

### A. Dr. Díaz-Miranda's testimony

Dr. Díaz-Miranda is a forensic psychologist who performs evaluations in family, sexual abuse and parental alienation cases. (Day 1 of Competency Hearing at 11). She has held a Doctoral Degree in Psychology since 2018. Id. at 17. This was the first time she testified as a forensic psychologist in any court. Id. at 15. Over the course of her career, she has performed ten competency evaluations in criminal cases. Id. at 14-15.

Dr. Díaz-Miranda testified that Mr. Ortiz-Marrero **does not** have the minimum competency to be tried or the necessary skills to assist his attorney in his defense. Id. at 42-43. To reach that opinion, she interview Defendant and others and administered the following tests to Defendant: (i) the Nonverbal Intelligence Test ("TONI-4"); (ii) the Beck Anxiety Inventory ("BAI"); (iii) Beck Depression Inventory ("BDI"); (iv) Beck Hopelessness Scale ("BHS"); (v) Wechsler Scale Test for Adults (Third Edition) ("Wechsler"); and (vi) the Vineland Adaptive Behavior Scale

(Second Edition) ("Vineland"). Id. at 22, 29, 34 and 40. The Court will summarize her findings as to each test below.

   1. TONI-4 Test

The TONI-4 measures an individual's general mental intellectual ability. Id. at 24. According to Dr. Díaz-Miranda, Mr. Ortiz-Marrero's scores on the TONI-4 show he has the same planning and decision-making strategies as a 9-year and 6-month-old child. Id. at 25-26, 40. The test also reflects Defendant had a moderate state of anxiety and depression requiring professional help. Id. at 40. On cross examination, Dr. Díaz-Miranda admitted that the manual which explains how to score the TONI-4 test states that the use of age equivalency has "been criticized extensively and most authorities have strongly and persuasively advocated discontinuing their use because their statistical properties are inadequate, and their results are often misleading." (Docket 330 at 38-39). Defendant's score placed him in the "Low Average" category, which corresponds with an IQ between 80 and 89. (Day 1 of Competency Hearing at 26).

   2. Different Types of Beck Tests

Dr. Díaz-Miranda also performed three types of Beck psychological tests on Defendant. First, the BDI measures the depression reported by the person based on how they have been feeling during the past two weeks. Id. at 27. Mr. Ortiz-Marrero's score shows he has moderate depression and requires help from a

mental health professional. Id. Second, the BAI follows the same methodology as the BDI test, which means Defendant receives certain instructions, reads the reactives and reports how he has felt during the past two weeks. Id. at 27-28. Mr. Ortiz-Marrero's score shows he has moderate anxiety requiring mental health assistance. Id. at 28. Third, the BHS requires answering true or false questions. Id. Mr. Ortiz-Marrero's score indicates minimal hopelessness. Id.

    3. Wechsler Test

The Wechsler Scale for Adults is a standardized test for Puerto Rico's population which evaluates the intelligence of an individual and different areas of cognitive functioning. Id. at 29. Id. at 29. Mr. Ortiz-Marrero tested at an average level of intellectual functioning on five of seven subtests for verbal skills, and borderline in the other two tests. Id. at 31. In the execution scale, he tested at an average level of intellectual functioning in three out of six subtests. Id. at 31-32. But in the other three tests, he was in the category of borderline and intellectual disability. Id. at 32. This reflects weakness or disability in the areas of attention, memory, and speed of processing, among other things. Id. On cross-examination, Dr. Díaz-Miranda admitted discontinuing testing ahead of time and therefore deviating from the testing instructions. (Docket No. 330 at 33-34). She also admitted to making a mistake in recording the

test score as a three on the test itself and the score on the report's cover sheet as a four, whereas she admitted she should have recorded the actual test score as a four. Id. at 32-33. Defendant's score of "4" on the Weschler test shows his cognitive function is considered "borderline" and classified as a weakness, nevertheless it does not equate to intellectual disability. Id. at 34.

### 4. Vineland Test

The Vineland Test evaluates adaptive functioning which goes beyond IQ results. (Day 1 of Competency Hearing at 34). To perform this test, Dr. Díaz-Miranda interviewed Defendant's mother on three main domains – communication, daily living skills and socialization. Id. at 35. His composite score shows he has a mild developmental disability, which limits his functioning in all three areas. Id. at 35-37, 40-41. On cross-examination, Dr. Díaz-Miranda explained it is possible to have a mild developmental disability and still be competent. (Docket No. 330 at 17).

**B. Dr. Rodríguez's testimony**

Dr. Rodríguez, who has been a forensic psychologist since 2019, is currently a psychologist for the BOP. Id. at 55. She has a Doctoral Degree in Clinical Psychology with a concentration in Forensic Psychology. Id. at 55-56. Forensic psychology applies psychological techniques to answer a legal question. Id. at 57.

Case 3:18-cr-00496-RAM-BJM   Document 337   Filed 06/29/22   Page 7 of 20
Criminal No. 18-496 (RAM)                                            7

Dr. Rodríguez has been qualified as an expert in court ten times and has testified for and against the Government. Id. at 61. She testified that about thirty (30) percent of her evaluations have resulted in a finding of not competent to stand trial. Id. She also stated about seventy (70) percent of the cases she receives from the Court system are for evaluations for competency to stand trial. Id. Most of the patients she evaluates in Spanish are from Puerto Rico. (Docket No. 335 at 54).

Dr. Rodríguez concluded there is no evidence Defendant is suffering from a mental disease or defect that interferes with his ability to understand the legal procedures and to properly assist in his defense. Id. at 4-5. She also opined Defendant was malingering during the evaluation. Id. at 19. She defined malingering as "the intentional production of false or exaggerated physical or psychiatric symptoms for a secondary gain." (Docket No. 330 at 61-62). Thus, by saying Defendant was malingering, she meant "he was attempting to present as cognitively impaired by performing poorly on measures of cognitive functioning." (Docket No. 335 at 19).

To reach her opinions, Dr. Rodríguez evaluated Mr. Ortiz-Marrero between October to December 2021 at FDC Miami. (Docket No. 330 at 63). To prepare for the evaluation, she reviewed court documents, Dr. Díaz-Miranda's report, and BOP's medical, psychological and disciplinary records. Id. at 64. She also

interviewed Defendant, custody staff and Defendant's treating psychologist at MDC Guaynabo. Id. at 65. Finally, Dr. Rodríguez administered the following tests to Mr. Ortiz-Marrero: (i) the Comprehensive Test of Non-Verbal Intelligence, Second Edition ("CTONI-2"); (ii) the Validity Indicator Profile ("VIP"); (iii) the Personality Assessment Inventory ("PAI"); (iv) the Structured Inventory of Malinger Symptomatology ("SIMS"); and (v) the Georgia Court Competency Test ("GCT"). Id. Dr. Rodríguez did not score the GCT because it is in English, and she relied on a BOP translation of that test into Spanish to guide her competency interview, which she conducted in Spanish. Id. at 65-66. During the evaluation, Mr. Ortiz-Marrero was only being medicated for hypertension. Id. at 66-67. As with tests performed by Dr. Díaz-Miranda, the Court will address each test conducted by Dr. Rodríguez separately.

   1. CTONI-2 Test

The CTONI-2 tests non-verbal intelligence. Id. at 67. Mr. Ortiz-Marrero's score on the CTONI-2 was very low; in fact, his score on the CTONI-2 was 21 points lower than his performance during Dr. Díaz-Miranda's evaluation. Id. at 69. Additionally, his score fell within the "very poor" range, which placed him among persons with intellectual disabilities. (Docket No. 335 at 15). Dr. Rodríguez testified that intelligence is "a relatively stable trait" which means that his results should have been similar or better than his results with Dr. Díaz-Miranda due to the "practice

effect." (Docket No. 330 at 69). The fact that Mr. Ortiz-Marrero received significantly lower scores on the CTONI vis à vis the TONI-4 and EIWA-III (also known as the Wechsler Test) administered by Dr. Miranda-Díaz made her suspect Defendant might be malingering. Id. Moreover, she testified that Mr. Ortiz-Marrero's scores on the CTONI were inconsistent with his level of functioning in his institution because, per her own observations and interactions with him, he was able to communicate and advocate for himself and was able to function well there. (Docket Nos. 330 at 69-70; 335 at 16). Dr. Rodríguez asserted that, barring a traumatic brain injury during the six months between her and Dr. Díaz-Miranda's evaluations, for which there was no evidence on the record, there is no rational explanation for such a significant cognitive decline in Defendant. (Docket No. 335 at 16).

    2. VIP Test

The VIP Test measures an individual's motivation and effort on cognitive tasks. (Docket Nos. 330 at 68; 335 at 7). Mr. Ortiz-Marrero's responses on this test "fell within the range of irrelevance responding," which is a response style "associated with individuals who are attempting to perform poorly on a measure." (Docket No. 335 at 7). She further clarified this means that "[o]ften times [these individuals] are responding without regard to item content, meaning they're not even looking at the questions." Id. Government's Exhibit I is a graphical

representation of Mr. Ortiz-Marrero's performance curve showing his performance as a function of difficulty on the VIP test. (Docket Nos. 335 at 8; 329-1 through 329-2). It shows he sometimes tried to answer correctly, sometimes attempted to purposefully respond incorrectly, and yet other times was responding without looking at the item in question. (Docket No. 335 at 9-10). Thus, she concluded cognitive tests "administered concurrently with the VIP non-verbal are not accurate representations of [Defendant's] true cognitive abilities as they might have been influenced by the same influences as the VIP such as a motivation to perform poorly." Id. at 10.

    3. PAI Test

The PAI objectively measures a person's personality and psychiatric characteristics and their level of honesty in responding. (Docket No. 330 at 68). In other words, per Dr. Rodríguez, it measures whether a person responds in a consistent or inconsistent manner and if they are exaggerating or minimizing symptoms. Id. The results of the PAI were rendered inconsistent and therefore meaningless due to Defendant's random responses without regard to item context. (Docket No. 335 at 12, 15). As a result, Dr. Rodríguez could not make clinical interpretations of the results. Id. Government's Exhibit 2 is a graphical representation of Defendant's results on the PAI. (Docket Nos. 335 at 13; 329-3 through 329-4).

4. <u>SIMS Test</u>

The SIMS test screens for feigning cognitive and psychiatric symptoms. (Docket Nos. 330 at 68; 335 at 70). During SIMS testing, Mr. Ortiz-Marrero "endorsed some atypical symptoms of depression that are not typically seen in genuine psychiatric population[s] but not the level that rendered the measure invalid." (Docket No. 335 at 62). Instead, even though his SIMS test did not reflect exaggeration of symptoms, Dr. Rodríguez concluded he was malingering based on the overall results of her assessment. <u>Id.</u> at 63-64.

According to Dr. Rodríguez, in her professional opinion and based on her interactions with Defendant, Mr. Ortiz-Marrero did not present any symptoms or characteristics of someone with an intellectual disability (Docket No. 330 at 70). She testified Defendant "was able to advocate for his needs" and as an example provided the fact that he submitted an electronic request for the status of his evaluation. <u>Id.</u> at 70-71. Moreover, FDC Miami's staff reported Defendant had no difficulties with daily living skills, obtaining meals without issues, keeping his cell clean, purchasing items from the Commissary, or utilizing the telephone system without assistance. <u>Id.</u> at 71. BOP records from MDC Guaynabo and discussions with MDC Guaynabo staff further confirmed Defendant's ability to function within a correctional institution. (Docket No. 335 at 58). Hence, her opinion that Mr. Ortiz-Marrero is competent

to stand trial is based on the totality of the information obtained from her forensic evaluation and because Defendant did not show symptoms of any active mental illness during her evaluation of him. Id. at 4-6.

Furthermore, Dr. Rodríguez disagrees with Dr. Díaz-Miranda's assessment that Mr. Ortiz-Marrero has an intellectual disability. She testified the available evidence, namely Dr. Díaz-Miranda's own evaluation, shows "'minimum performance' within the below average range of functioning that is not intellectual disability." (Docket No. 335 at 54). Moreover, she is of the view that Dr. Díaz-Miranda's testing likely presents "an underestimation of [Defendant's] actual cognitive ability because of the errors that were performed in administration." Id. at 54. Those errors include discontinuing testing too soon in sections of the Wechsler test, thereby deviating from standardization of the test and taking away the possibility of obtaining a correct response. Id. at 23-24. For example, Dr. Rodríguez noted Dr. Díaz-Miranda did not properly query several responses by Defendant in that test, and she noted some questions were scored but did not have Defendant's response to the questions. Id. at 25-27. Thus, they could not be compared to the normalized samples, rendering the scores invalid. Id. at

26. The Court finds Dr. Rodríguez's testimony and her opinions and critique of Dr. Miranda's testing credible and well supported.[1]

## II. LEGAL STANDARD

For decades, courts have held that "due process mandates that a criminal defendant be competent to stand trial or plead guilty." Roman-Portalatin v. United States, 2015 WL 3996053, at *3 (D.P.R. 2015) (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)). Hence, "[a] defendant's due process right to a fair trial includes the right not to be tried, convicted or sentenced while incompetent." United States v. Gonzalez-Ramirez, 561 F.3d 22, 28 (1st Cir. 2009) (citing Drope v. Missouri, 420 U.S. 162, 172-73 (1975)). A defendant is found competent when he: (1) understands "the nature of the proceedings against him," and (2) is "able to cooperate with counsel in his defense." Robidoux v. O'Brien, 643 F.3d 334, 339 (1st Cir. 2011) (quoting Cooper v. Oklahoma, 517 U.S. 348, 354 (1996)). 18 U.S.C. § 4241 adopted this competency test as first set forth in Dusky v. United States, 362 U.S. 402 (1960). See United States v. Wiggin, 429 F.3d 31, 37 n. 8 (1st Cir. 2005). Thus, a district court should conduct a hearing regarding a defendant's competency once it finds reasonable cause to believe

---

[1] The Court notes the First Circuit has upheld a finding that a defendant was competent to stand trial after highlighting that "earlier evaluations [of defendant] were 'probably invalid' because a [previous clinical psychologist's] report suggested malingering and because she did not follow the standardized administration of the test." United States v. Figueroa-Gonzalez, 621 F.3d 44, 46-47 (1st Cir. 2010). Therefore, the Court finds that at least one of the tests performed by Dr. Díaz-Miranda was invalid and their results cannot be considered by this Court to find Defendant incompetent.

the defendant is presently "suffering from a mental disease or defect rendering him mentally incompetent." 18 U.S.C.A. § 4241 (a) and (c).

If, after a competency hearing, the court finds **by a preponderance of the evidence** the defendant is currently suffering from a mental disease rendering him incompetent, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C.A. § 4241(d); *see also* United States v. Cruz-Ruiz, 2022 WL 716882, at *2 (D.P.R. 2022). To determine a defendant's competency, courts may rely on a variety of sources, including written medical opinions and observations by the court, counsel, and defendant himself as to the defendant's demeanor and fitness to stand trial. *See* United States v. Rivera-Rivera, 900 F. Supp. 2d 120, 140 (D.P.R. 2012) (quoting United States v. Muriel–Cruz, 412 F.3d 9, 13 (1st Cir.2005)). A court may accept parts of defendant's or an expert's testimony "yet reject the ultimate conclusion that they advocated." Id. (quoting Pike v. Guarino, 492 F.3d 61, 76 (1st Cir. 2007)).

### IV. ANALYSIS

**A. Defendant understands the nature of the proceedings against him**

The Court finds the First Circuit's Figueroa-Gonzalez instructive when determining whether Defendant understands the nature of the proceedings against him. *See* Figueroa-Gonzalez, 621 F.3d at 45-47. In Figueroa-Gonzalez, such as here, the First

Circuit upheld a competency finding in a case where a forensic psychologist had determined defendant was competent to stand trial based on his observation of defendant including "four hours of psychological testing, a review of records and interviews of the attorneys and detention center staff." Figueroa-Gonzalez, 621 F.3d at 46, 48. The Court also considered the psychologist's conclusion that "there is no evidence that [defendant] is currently experiencing the active phase of a mental disorder or defect" rendering him unable to understand the nature and consequences of the proceedings against him. Id. at 46 (internal quotation marks omitted). Furthermore, at least one psychologist stated the defendant was malingering because his performance on different tests was "consistently poor on the easiest items and . . . improved as item difficulty increased" and his scores were "significantly below the results obtained in genuinely impaired individuals." Id. at 46 n. 2. The latter suggested he "attended to the questions, understood the content, scanned for the correct response, and purposely chose the incorrect responses on a consistent basis." Id.

Likewise, in United States v. Velez-Castro, the Court found defendant competent to stand trial. See United States v. Velez De Castro, 2005 WL 2416360 (D.P.R. 2005). The Court held as much after crediting an expert's testimony finding the defendant could understand the nature of the proceedings against him. Id. *2. This

because defendant "responded properly to questions of the roles played by his attorney, the prosecutor, the judge, and the jury as well as of the possible outcomes." Id. at *4. See also United States v. Melendez Garcia, 982 F. Supp. 112, 116-17, 119-120 (D.P.R. 1997), aff'd sub nom. United States v. Rosario-Diaz, 202 F.3d 54 (1st Cir. 2000) (basing a finding that defendant had validly waived her Miranda rights on expert testimony attesting to that and testimony stating the defendant had already been found competent given she understood the proceedings against her, had a "good" relationship with her attorney allowing her to participate in her own defense and recognized she was being accused of participating in a proceeding in which a person lost their life).

The Court finds that Mr. Ortiz-Marrero, like the defendants in the above-mentioned cases, understands the nature of the proceedings against him. During the competency hearing, Dr. Rodríguez testified Defendant understands courtroom roles and has a sufficient understanding of courtroom proceedings. Defendant told her that he could: (i) assist his attorney by answering his questions truthfully, (ii) accurately recall the name of his attorney, and (iii) contact his attorney by phone. (Docket No. 335 at 5-6, 49). Moreover, Mr. Ortiz-Marrero showed "an appreciation [for] the plea-bargaining process" by discussing with Dr. Rodríguez some of the plea conversations he had with his attorney and the prosecutor. Id. at 6, 50. Dr. Rodríguez also testified

that Defendant told her "someone else was given five to six years for a similar charge and he was looking for a similar plea." Id. at 50. She further stated Defendant was able to accurately describe to her what a plea is. Id. at 50-51. Mr. Ortiz-Marrero even told Dr. Rodríguez about a possible defense strategy. Id. at 51. Lastly, Dr. Rodríguez saw no symptoms of active mental illness during Defendant's evaluation process. Id. at 66.

Furthermore, Dr. Rodríguez's assessment of Mr. Ortiz-Marrero's ability to understand the nature of proceedings against him also coincides with the answers he gave Dr. Díaz-Miranda. For example, when asked by Dr. Díaz-Miranda about the nature of the offenses against him, Defendant responded he was charged with "conspiracy and save drugs." (Docket No. 330 at 19). Moreover, his answers reflect a correct understanding of the roles of participants in the judicial proceedings, "the lawyer defends, the prosecutor is against me, and the judge makes the decision." Id. While there is no mention of the jury, that may well be an issue with the questions given that Defendant was asked "How does a judge find out if someone is guilty or not guilty?" to which he gave an appropriate answer based on that question: "with sufficient evidence." Id. Similarly, when asked "Can a judge sentence someone who is found not guilty?", Defendant responded "No". Id. at 19-20. He also answered that he knows he cannot be compelled to testify, but if he does, he must testify truthfully. Id. at 20-

21. Defendant's answers therefore show he understands the proceedings against him.

**B. Defendant can properly assist counsel in his defense:**

The Court also finds that Mr. Ortiz-Marrero can properly assist counsel in his defense. This finding is based on Dr. Rodríguez's opinions, as described above, and on Mr. Ortiz-Marrero's answers to Dr. Díaz-Miranda's questions at the competency evaluation. When asked how he could help his lawyer, Defendant answered by "[c]ooperating with him." (Docket No. 330 at 20). When asked "Why is it important to tell your lawyer everything that happened?", Defendant answered "So that he knows everything and defends myself [sic] always with the truth." Id. at 21. Judges within the District Court of Puerto Rico have found in similar situations that a criminal defendant can properly assist his attorney in his defense. See e.g., Velez De Castro, 2005 WL 2416360, at *4 (finding the defendant competent to stand trial given he "denied having any problems understanding or communicating with his attorney.")

Additionally, the Court is particularly persuaded by Defendant's demeanor during his attorney's cross-examination of Dr. Rodríguez. When his attorney consulted Defendant about a fact, Defendant suddenly perked up and talked with his attorney in an animated fashion. This was a stark change from Mr. Ortiz-Marrero's prior and subsequent demeanor, in which he kept his head down and

appeared withdrawn. Moreover, the moment is indicative of Mr. Ortiz-Marrero's ability to properly assist counsel in his defense **and** bolsters Dr. Rodríguez's conclusion that Defendant is malingering. The First Circuit has emphasized that while a defendant "possesses a constitutional right to a competency hearing if a bona fide doubt exists as to his competency, **he surely does not have the right to create a doubt as to his competency or to increase the chances that he will be found incompetent by feigning mental illness**." United States v. Nygren, 933 F.3d 76, 86 (1st Cir. 2019) (quoting United States v. Greer, 158 F.3d 228, 237 (5th Cir. 1998)) (emphasis added).

## V. CONCLUSION

Having heard the expert testimony, considered the documentary evidence, and observed Defendant during the competency hearing, the Court finds Defendant Luis Daniel Ortiz-Marrero competent to stand trial. Mr. Ortiz-Marrero **is not** presently suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly with his defense.

The matter is referred to Magistrate Judge Bruce J. McGiverin for a hearing and a report and recommendation on Mr. Ortiz-Marrero's pending *Motion to Suppress*. (Docket Nos. 61 and 86).

Case 3:18-cr-00496-RAM-BJM   Document 337   Filed 06/29/22   Page 20 of 20

Criminal No. 18-496 (RAM)                                            20

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of June 2022.

                                    S/ RAÚL M. ARIAS-MARXUACH
                                    United States District Judge